UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JULIA A. TAYLOR,

           Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of Social Security,

           Defendant.

CASE NO. C04-5702KLS

ORDER AFFIRMING THE COMMISSIONER'S DECISION TO DENY BENEFITS

     Plaintiff, Julia A. Taylor, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

     Plaintiff currently is forty-nine years old.[1] Tr. 24. She has a high school education and completed two years of college. Tr. 62. She has past work experience as a floral designer. Tr. 57.

     Plaintiff filed applications for disability insurance and SSI benefits on August 13, 2001, alleging

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

disability as of March 23, 2001, due to chronic lung infections. Tr. 15, 49, 56, 308. Her applications were denied initially and on reconsideration. Tr. 15, 24-26, 31, 312-13, 317-18. She requested a hearing, which was held on February 18, 2003, before an administrative law judge ("ALJ"). Tr. 325. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 325-42.

On April 18, 2003, the ALJ issued a decision finding plaintiff not disabled. Tr. 21-22. Specifically, the ALJ found in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity;

(2) at step two, plaintiff had a "severe" impairment consisting of chronic bronchitis;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff retained a residual functional capacity to perform a modified range of light work, which did not preclude her from performing her past relevant work; and

(5) at step five, plaintiff was capable of performing other work existing in significant numbers in the national economy.

Tr. 16, 21-22. Plaintiff's request for review was denied by the Appeals Council on September 2, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. §§ 404.981, 416.1481.

On October 19, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). Plaintiff argues that decision should be reversed and remanded for an award of benefits because:

(a) the ALJ erred in evaluating the opinions of her two treating physicians;

(b) the ALJ erred in assessing her credibility;

(c) the ALJ erred in assessing her residual functional capacity; and

(d) the ALJ erred in finding her capable of performing her past relevant work, as well as other work existing in significant numbers in the national economy.

For the reasons set forth below, however, the undersigned disagrees, and therefore finds the ALJ properly determined plaintiff to be not disabled.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ Properly Evaluated the Opinions of Plaintiff's Two Treating Physicians</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; see also <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07

1  (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

2       In general, more weight is given to a treating physician's opinion than to the opinions of those who
3  do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of
4  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."
5  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
6  Cir. 2001); Magallanes, 881 F.2d at 75. An examining physician's opinion is "entitled to greater weight than
7  the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion
8  may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at
9  830-31; Tonapetyan, 242 F.3d at 1149.

10      Dr. Po-Shen Chang, one of plaintiff's treating physicians, filled out a physical capacities evaluation
11 form in late August 2002. In that form, Dr. Chang found plaintiff capable of sitting and standing for a total
12 of eight hours both at one time and during an eight-hour workday, and walking for a total of one half hour
13 at a time and for a total of two hours in an eight-hour workday. Tr. 270. He found her capable of lifting up
14 to 50 pounds occasionally and 20 pounds frequently, carrying up to 25 pounds occasionally and 10 pounds
15 frequently, and using her feet and hands for repetitive actions and movements. Id. He also she could bend
16 and squat frequently, and crawl, climb and reach above her shoulder occasionally. Tr. 271.

17      Dr. Chang further opined that due to her recurrent bronchitis, plaintiff was moderately restricted in
18 her ability to engage in activities involving unprotected heights, and she was totally restricted in her ability to
19 engage in activities involving exposure to marked changes in temperature and humidity or to dust, fumes
20 and gases. Id. He also opined that she would likely miss more than four days of work per month. Id. In a
21 letter dated September 10, 2002, Dr. Change explained that his reason for opining that plaintiff would miss
22 that many days of work per month was because of her chronic recurrent bronchitis. Tr. 272. He felt that
23 her condition "would not be improving," and stated that "[w]henever she has a flare of her bronchitis, she
24 will need antibiotics and inhaler in order to improve her breathing." Id.

25      Dr. Ralph E. Nottingham, plaintiff's other treating physician, also provided an opinion regarding her
26 ability to work in a letter he wrote in early February 2003. That letter reads in relevant part:

27      My patient, Ms. Julia A. Taylor, has requested I write you concerning the evaluation and
        treatment she has received over the years in our Pulmonary Medicine Clinic. She has
28      been followed off and on since she was first seen in 1998 for a second opinion after a
        full evaluation in another clinic failed to find a cause for the chronic cough that has

ORDER
Page - 4

> bothered her for most of her life. This cough is daily and waxes and wanes. She suffers frequent and unpredictable exacerbations of the cough and requires antibiotics to control the worse episodes. The cough is particularly a social burden for her. When she has one of her frequent episodes, it is difficult for her to do any job that involves interaction with the public. Her coughing is such that fellow workers and people in general who encounter her fear for their own health. They are afraid they will "catch something" and so the pt is either asked to go home or requested [sic] not even go to work. Obviously, this interferes with not only her work but her daily life and her interpersonal relationships.
>
> . . . we are still without a clear cause for this patients [sic] very real cough. Her list of tests for this problem may be the longest I have ever seen.
>
> In the usual sense of the word, Ms. Taylor is not disabled for physically she can do her day to day self care, care for others, drive, walk, breath and keep herself up with the world. However, she cannot be relied onto [sic] be able to go to work daily, weekly and monthly in a regular fashion without having to call in due to her severe cough or, if she comes in despite it, being sent home at the request of others out of fear. In twenty five years I have rarely been involved with a patient who coughs as frequently or who has resisted so many attempts to discover the cause. She is an unusual patient who has lived with and put up with her cough for many years.

Tr. 306.

The ALJ provided the following reasons for rejecting the opinions of Drs. Chang and Nottingham:

> I give little weight to the August 2002 opinion of Dr. Chang that the claimant would likely miss more than four days of work per month. (Exhibit 7F). Likewise, I give little weight to the February 2003 opinion of treating pulmonologist Dr. Nottingham that the claimant cannot be relied upon to be able to attend work on a regular basis because of severe coughing. (Exhbit 9F). Dr. Chang and Dr. Nottingham have provided no explanation as to why the claimant's symptom of coughing would preclude work activity. Their opinions appear to be based primarily on the subjective reporting of the claimant. Their opinions are also inconsistent with the claimant's testimony and with her work history. The claimant testified that her symptom of coughing is always present. She has worked at her floral design job with this limitation for the past 17 years and was able to perform work at a level consistent with the Social Security definition of substantial gainful activity on a part-time basis working eight hours per day two to three days per week. From a practical standpoint, if the claimant were only working two to three days per week, it is even more unlikely that she would miss more than four days of work per month due to exacerbations of coughing.

Tr. 20. Plaintiff argues in so finding, the ALJ failed to provide clear and convincing reasons for rejecting the opinions of Dr. Chang and Dr. Nottingham. The undersigned disagrees.

First, plaintiff asserts that Dr. Chang did provide an explanation for his opinion that plaintiff would likely miss more than four days of work per month, noting that in his early September 2002 letter, he stated she would need antibiotics and an inhaler to improve her breathing whenever she experienced a flare in her chronic recurrent bronchitis. Tr. 272. It is not clear, however, on exactly what evidence Dr. Chang based that explanation. The record contains little in the way of diagnostic notes or other clinical findings from

1  him. What diagnostic notes of his that do exist, fail to show plaintiff's condition was of such severity that
2  she would need to miss more than four days of work per month. See Tr. 115, 283, 299.

3  The same is true with respect to the opinion provided by Dr. Nottingham. While there are more in
4  the way of treatment notes from him, those notes provide few objective findings to support his opinion that
5  plaintiff could not be relied on to attend work in a regular fashion. In late January 2001, she was noted to
6  be in no acute distress. Tr. 109. Chest x-rays from November 2000 were unremarkable. Id. Although she
7  had "large airway rhonchi," plaintiff had no wheezes or rales, her breath sounds were symmetrical, and
8  forced expiration triggered only "a little coughing." Id. Her symptoms remained unchanged the following
9  month. Tr. 114. In early April 2001, the only reference was to "coarse rhonchi." Id.

10  Plaintiff reported her cough was persisting in late May 2001, and she was noted to be back again on
11  antibiotics. Tr. 113. She had the "same scattered rhonchi" and "a few nonspecific nodules," but she had no
12  bronchiectasis. Id. The following month mention was made once more of her cough being back, and in late
13  August 2001, plaintiff was noted to respond to antibiotics but was "always having" symptoms again "in a
14  few weeks." Tr. 112-13. In was further noted, however, that this problem had "been with her since at least"
15  junior high school, and that it had "not really" changed. Id.

16  Plaintiff told Dr. Nottingham in late September 2001, that she noted "no change" in her symptoms,
17  that she had not had hemoptysis, that she had not taken any antibiotics "in several months," and that she
18  thought she was "stable." Tr. 111. Again, all Dr. Nottingham found were bilateral large airway rhonchi and
19  "a few scattered coarse rales." Tr. 112. He diagnosed her with chronic bronchitis. Id. In late February
20  2002, although Dr. Nottingham heard rhonchi, plaintiff exhibited "[g]ood air exchange." Tr. 163. A CT
21  scan done in early March 2002, was noted to be stable. Tr. 165. Also at that time, plaintiff reported feeling
22  "well" and that she had not noted any change in her cough. Tr. 162. Scattered coarse rhonchi were seen
23  again on examination. Id.

24  In mid-July 2002, plaintiff reported both that she was "not coughing much" and "not producing any
25  sputum" and that her cough was "now gone again and not bothering her." Tr. 155. She also was noted to
26  be "feeling well." Id. Her lungs were "clear" bilaterally, and although she was assessed with having a
27  chronic cough, Dr. Nottingham deemed it "to be OK for now." Id. He added a note that he wanted to see
28  plaintiff again in one month's time "to be sure" all was well. Tr. 156. Indeed, in mid-August 2002, plaintiff

in fact reported "feeling well," and that while she had developed a non-productive cough again two days earlier, she felt it would "go away as usual" without any treatment. Tr. 153. Dr. Nottingham's examination of her confirmed plaintiff's statements, and new chest x-rays were noted to be "improved." Id.

Although plaintiff was noted to be "[r]ecently back on" antibiotics for her "purulent sputum" in late November 2002, she also reported "feeling better" as a result thereof. Tr. 287. She had no fever or chills, and her cough was "less." Tr. 288. Plaintiff's physical examination showed only scattered large airway rhonchi, with no rales or wheezes, and "good color" in her extremities. Id. Dr. Nottingham concluded his assessment of plaintiff by noting that she was "[s]table for now," and knew "to rotate [her] antibiotics as needed," though she was directed to use them "as little as possible." Id.

Thus, although Dr. Nottingham's diagnostic and other treatment notes are more extensive than those of Dr. Chang, and do show that plaintiff has suffered from an intermittent and chronic cough and bronchitis during the time he treated her, they do not give any indication that plaintiff had any significant work-related limitations resulting therefrom. Nowhere in those notes, or, as discussed above, in the diagnostic and other treatment notes of Dr. Chang, does either physician state, or even suggest, that plaintiff would be unreliable in attending work regularly, let alone miss more than four days of work per month due to her symptoms or need to treat those symptoms. As such, the ALJ did not err in finding their opinions to be unsupported by the objective medical evidence. Thomas, 278 F.3d at 957 (ALJ need not accept treating physician's opinion if it is brief, conclusory, and inadequately supported by clinical findings); see also Tonapetyan, 242 F.3d at 1149; Magallanes, 881 F.2d at 75.

Because there is very little in the way of objective medical evidence to support the opinions of Drs. Chang and Nottingham, it also was not unreasonable for the ALJ to conclude that their opinions were based primarily on plaintiff's subjective complaints. While Dr. Chang did opine that she would need antibiotics and an inhaler to improve her breathing when she has a flare of her bronchitis, he did not set forth in any of his diagnostic notes or reports any evidence as to why the need to use antibiotics or an inhaler prevented her from being able to work. Indeed, Dr. Nottingham's diagnostic notes show plaintiff often saw improvement without resorting to antibiotics, and when she did use them, she improved fairly quickly thereafter, with no apparent adverse side effects. The opinion of Dr. Nottingham, furthermore, appears to be based mostly on information he could have learned only from plaintiff's own subjective reporting. See Tr. 306 (particularly paragraphs one and three).

      Finally, as explained in further detail below, plaintiff's testimony and work history does appear to be inconsistent, at least in part, with the opinions of her treating physicians. As noted by the ALJ, plaintiff has testified, and it has been reported, that she has had her recurrent cough for at least 25 years. Tr. 166, 329. Yet apparently she was able to continue working for eight hours a day two to three days per week in a floral shop for 17 of those years up until she left that job in March 2001. Tr. 20, 54. Plaintiff argues her testimony is consistent with that of her physicians, in that she testified she was on her maintenance dose of antibiotics when she was working, that she can only have antibiotics now when she can no longer go on without them, that the maintenance dose was what kept her from becoming really ill, and that her worst times now come on at a more frequent rate than before.

      That testimony, however, is not entirely consistent with what plaintiff previously had reported to Dr. Nottingham. In late September 2001, for example, some six months after she left her floral designer job, plaintiff told Dr. Nottingham that she was stable, even though she had not taken antibiotics for the past several months. Tr. 111. She had "good air exchange" in late February 2002, and CT scan taken in early March 2002, showed she continued to be stable, despite her being told back in late August 2001, to take antibiotics only when feeling overwhelmed by her symptoms. Tr. 112, 163, 165. Plaintiff continued to feel "well" with an improved cough through late November 2002. Tr. 153, 155, 162, 287. Indeed, in mid-July 2002, she reported that her cough was "now gone" and "not bothering her," and in mid-August 2002, she thought that her cough, which had recently returned, would "go away as usual" again, without any further treatment. Tr. 153, 155.

      In any event, the fact that plaintiff was able to continue working for so many years with essentially the same chronic cough condition she now alleges is disabling to her, was a relevant consideration for the ALJ to take into account in evaluating the opinions of her treating physicians. Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). As discussed below, the ALJ did not err in discounting plaintiff's credibility. Accordingly, the ALJ also did not err in rejecting the opinions of Dr. Chang and Dr. Nottingham in part because they relied primarily on

plaintiff's subjective reporting.

II.     The ALJ Did Not Err in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

As noted above, the ALJ discredited plaintiff's allegations of disabling cough-related symptoms in part due to the fact that "she testified she has had this condition for 25 years during which she demonstrated an ability to work at a level consistent with the Social Security definition of substantial gainful activity." Tr. 18-19. This was a valid reason upon which the ALJ based his decision to find her less than fully credible. See Smolen, 80 F.3d at 1284 (ALJ may consider claimant's work record). Plaintiff asserts that there was an adverse change in her treatment and condition since she stopped working. As discussed in the previous section, however, that assertion is not borne out by the weight of the evidence in the record.

1    The ALJ also provided the following reason for discounting plaintiff's credibility:

> The claimant's exacerbations of bronchitis are relieved with antibiotic treatment and have not required hospital admissions or intensive hospital or emergency room treatment lasting one or more days. Medical records reveal the claimant sought emergency treatment on only one occasion during the period at issue for increased shortness of breath in May 2001 and was diagnosed with acute pneumonitis. (Exhibit 3F).

Tr. 19. Failure to assert a good reason for not seeking or following a prescribed course of treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). On the other hand, if the claimant provides evidence of a good reason for not taking medication, his or her symptom testimony cannot be rejected because he or she failed to do so. Smolen, 80 F.3d at 1284.

Plaintiff argues that she never has alleged the need to seek intensive hospitalization or emergency room treatment, and that the ALJ failed to explain why her failure to do so is relevant in light of the fact that she has ready access to her treating physicians. It is true a claimant need not require frequent hospital or emergency room care in order to be found disabled. However, other than on the one occasion when she was hospitalized, plaintiff has not required much in the way of treatment other than the occasional use of antibiotics, which the record shows has relieved her symptoms. See Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation). As discussed above, furthermore, even after her alleged onset date of disability, the record shows that plaintiff was been stable with improved symptoms when <u>not</u> taking antibiotics as well.

The ALJ next discounted plaintiff's credibility for the following reason:

> The record suggests that the claimant has exaggerated her functional limitations. Her allegation that she is unable to walk any amount of time, that she can stand for one hour before needing rest, can sit for one hour before needing to rest, and can lift and/or carry up to 10 pounds occasionally is also contradicted by the opinion of treating physician Dr. Chang. Dr. Chang reported in August 2002 that the claimant was limited only by recurrent bronchitis and could sit eight hours of an eight-hour work day, stand eight hours of an eight-hour work day and could walk one-half hour at one time up to two hours in an eight-hour workday. (Exhibits 4E and 7F).

Tr. 19. Plaintiff argues the ALJ failed to explain how this difference rendered her testimony not credible. However, a determination that a claimant's complaints are "inconsistent with clinical observations" can

ORDER
Page - 10

satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Certainly, as noted above, Dr. Chang's opinion regarding plaintiff's ability to sit, stand and walk shows greater functional abilities on her part than she herself has alleged. Dr. Chang's opinion also is supported by the opinion of Dr. Robert G. Hoskins, a non-examining consulting physician. Tr. 145-52. The ALJ, therefore, did not err in discounting plaintiff's credibility for this reason as well.

To determine if a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. Here, the ALJ found as follows:

> The claimant has reported she can perform her own personal needs independently, drive a van, cook for six people, perform grocery shopping, do laundry, load and unload the dishwasher, and perform other household chores. She reported she "scans" the newspaper and watches television off and on. (Exhibit 4E and 6E). The ability to perform such activities is not consistent with an allegation of inability to work.

Tr. 19. Plaintiff argues the ALJ failed to make any finding that the activities described above consumed a substantial part of her day or that they are easily transferable to a work environment, and failed to fully describe the nature of the activities she reported.

Plaintiff, however, has provided contradictory reports regarding her activities of daily living. For example, in one report she stated she could drive for only a half hour at a time, while in another report she stated she could do so for an hour. Tr. 79, 90. She also reported being able to sit and stand for only one hour each, but then later reported being able to do each activity for a few hours. Tr. 77, 88. She reported requiring help with grocery shopping, which she claimed she did only one time per month. Tr. 78. Later, though, she reported no problems with grocery shopping. Tr. 89. Plaintiff also reported needing help with cleaning the house, but then later gave no indication she needed such help. Tr. 78, 89. It is true plaintiff has reported her ability to do housework often depends on how she is feeling. Tr. 79, 89. On the other hand, she has admitted cooking for up to six people. Tr. 78, 89.

In addition, other evidence in the record indicates she may be able to perform her activities of daily living at a higher level then she has alleged. For example, in late June 1002, Dr. Nottingham noted that she

had been "packing around" her seven-month old grandchild "quite a bit lately." Tr. 157. In addition, in his early February 2003 opinion letter, Dr. Nottingham expressly stated that plaintiff was not disabled from the standpoint of her physical functional capacity, in that she could "do her day to day self care, care for others, drive, walk, breath [sic] and keep herself up with the world." Tr. 306. Accordingly, while the ALJ did not expressly say so, it appears that plaintiff is capable of performing her activities of daily living at a level that is transferable to the work setting.

Lastly, the ALJ discounted plaintiff's credibility because "she began providing care for five foster children one year prior to the hearing," and because she provided "respite care for foster children one to two days per week." Tr. 19. This testimony, the ALJ found, suggested that she continued "to be able to perform activities of work," and had "merely exchanged her occupation as floral designer for that of care provider." Id. Although plaintiff testified that she does not do much work with respect to taking care of her foster children because they are teenagers (Tr. 336), it is not unreasonable to assume that caring for five or more children (even teenagers), requires at least a certain amount of work in terms of cooking, cleaning and other parental responsibilities. Indeed, plaintiff testified she cooked for up to six persons in her home, did laundry, washed the dishes, and drove her foster children to and from school. Tr. 77-78, 89.

To that extent, the ALJ did not err in considering plaintiff's activities of daily living. Further, while it may be true that foster care payments are not considered earned income to determine whether a claimant has engaged in substantial gainful activity in step one of the disability evaluation process, such income and the work activity it is derived from may be considered in determining a claimant's credibility regarding his or her allegations of inability to work. Even if it can be said that the evidence on this issue is contradictory or ambiguous, the court will not reverse the ALJ's credibility determination on that basis. See Johnson, 60 F.3d at 1434. Nor does the fact that the ALJ may have erred in basing his credibility determination in part on plaintiff's activities of daily living (although the court does not find that to be the case here) render the ALJ's determination invalid, as long as that determination is supported by substantial evidence as a whole, as it is here. Tonapetyan, 242 F.3d at 1148.

III. The ALJ Properly Found Plaintiff Could Perform Both Her Past Relevant Work and Other Work Existing in Significant Numbers in the National Economy

If a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for

work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why his or her "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> Based on all the evidence of record and extending as much credibility to the claimant as possible, I find the claimant retains the residual functional capacity to perform a modified range of light work.  She can lift up to 20 pounds occasionally and up to 10 pounds frequently. . . . She can sit and/or stand for eight hours of an eight-hour workday.  She can walk for one-half hour of an eight-hour workday.  She must avoid environment irritants such as dust, fumes, and smoke.  She is limited to work which involves only occasional contact with the general public.  She must be able to take restroom breaks at a frequency of once per hour for up to five minutes.

Tr. 19.  As discussed above, the ALJ properly evaluated the medical evidence in the record and did not err in assessing plaintiff's credibility.  Because plaintiff has raised no further reasons for challenging the ALJ's residual functional capacity assessment, and because it does not appear that there are any, the court finds that assessment to have been proper.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by substantial

evidence, ALJ did not err in omitting other limitations claimant failed to prove).

At the hearing, the ALJ posed a hypothetical question to the vocational expert that was substantially similar to the residual functional capacity assessment set forth above. Tr. 337. Based on that hypothetical question, the vocational expert testified that plaintiff could perform her past relevant work. Tr. 337-38. In addition, the vocational expert testified that she could perform other jobs existing in significant numbers in the national economy also based on that hypothetical question. Tr. 338. Accordingly, the ALJ did not err in finding plaintiff not disabled in light of the vocational expert's testimony. Tr. 21.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ properly determined plaintiff was not disabled. Accordingly, the ALJ's decision is affirmed.

DATED this 17th day of October, 2005.

Karen L. Strombom
United States Magistrate Judge